| | |
|---|---|
| **NATIONAL IMMIGRATION LAW CENTER**<br>MAX S. WOLSON (pro hac vice)<br>P.O. Box 34573<br>Washington, DC 20043<br>Telephone: (202) 216-0261<br>Facsimile: (202) 216-0266 | **ASIAN AMERICANS ADVANCING JUSTICE-ASIAN LAW CAUCUS**<br>HAMMAD ALAM  (SBN 284186)<br>55 Columbus Ave.<br>San Francisco, CA  94111<br>Telephone:    (415) 848-7711 |
| **ARNOLD & PORTER KAYE SCHOLER LLP**<br>JOHN A. FREEDMAN (pro hac vice)<br>601 Massachusetts Ave., NW<br>Washington, DC 20001-3743<br>Telephone: (202) 942-5000<br>Facsimile: (202) 942-5999 | **IRANIAN AMERICAN BAR ASSOCIATION**<br>ELICA S. VAFAIE (CA SBN 284186)<br>BABAK G. YOUSEFZADEH (CA SBN 235974)<br>5185 MacArthur Blvd. NW, Suite 624<br>Washington, DC  20016<br>Telephone:    (415) 774-3191 |
| **ARNOLD & PORTER KAYE SCHOLER LLP**<br>DANIEL B. ASIMOW (SBN 165661)<br>Three Embarcadero Center,10th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 471-3100<br>Facsimile: (415) 471-3400 | **COUNSEL COUNCIL ON AMERICAN-ISLAMIC RELATIONS, CALIFORNIA**<br>ZAHRA A. BILLOO (SBN 267634)<br>BRITTNEY REZAEI (SBN 309567)<br>3160 De La Cruz Blvd., Suite 110<br>Santa Clara, CA  95054<br>Telephone:   (408) 986-9874<br>Facsimile:       (408) 986-9875 |

*Attorneys for Pars Plaintiffs*

---

DECL. OF PARIS ETEMADI SCOTT                    Nos. 18-cv-07818-JD & 18-cv-1587-JD

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

| | |
|---|---|
| PARS EQUALITY CENTER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM BURNS, et al., <br><br> Defendants. <br><br> FARANGIS EMAMI, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ALEJANDRO MAYORKAS *et al.*, <br><br> Defendants. | Case Nos. 3:18-cv-07818-JD <br> 3:18-cv-1587-JD <br><br> **DECLARATION OF PARIS ETEMADI SCOTT REGARDING ORGANIZATIONAL PLAINTIFF PARS EQUALITY CENTER'S STATUS** |

Pursuant to 23 U.S.C. 1746, I declare under penalty of perjury as follows

1. I, Paris Etemadi Scott, submit this declaration to apprise the Court of the status of Pars as an organizational plaintiff on behalf of itself and its clients. I am over the age of 18 and have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently as set forth below.

2. I am the Legal Director of PARS Equality Center. I have been the Legal Director since October 2017. As Legal Director, I manage the Immigration Services Department while maintaining a full client caseload, working to expand legal services, and initiating litigation to advance immigrants' rights. This includes full representation of low-income clients in family-based and humanitarian immigration petitions including waivers, U visas VAWA, naturalization and adjustment of status.

3. Pars Equality Center ("Pars") is a 501(c)(3) non-profit community-based social and legal services organization headquartered in Menlo Park, California, with offices in San

Jose and Los Angeles, California. Pars Equality Center's offices are recognized by the U.S. Department of Justice ("U.S. DOJ"), Office of Legal Accreditation Program. Pars' legal staff members include licensed attorneys and accredited U. S. DOJ immigration representatives.

4.   Pars is dedicated to helping Iranian-American and other Persian-speaking communities fulfill their full potential as informed, self-reliant, and responsible members of American society. Since its inception in 2010, Pars has expanded its social and legal services to other immigrant and refugee communities, including Middle-Eastern, Southeast Asian, and Hispanic communities.

5.   Pars Equality Center achieves its mission primarily by providing extensive social and legal services. Pars offers education and outreach services, including in-house and mobile workshops, seminars, and roundtable discussions on immigrants' rights issues such as immigration arrests and detentions and rights at the border. Pars provides social services to its clientele and the broader community, including but not limited to English as a Second Language (ESL) instruction, citizenship classes, computer training and access to employment resources such as job fairs, assistance in navigating the U.S. social and medical systems, assistance with tax preparation, and cross-cultural and cross-generational support and training. In 2020, Pars served close to 5,000 individuals through its social, legal, and education and outreach services.

6.   Pars' 30 staff members also provide programs and services to communities affected by the Muslim Ban which was Presidential Proclamation 9645, "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats" (the "Muslim Ban"). The Muslim Ban prohibited entry into the United States on immigrant visas and certain non-immigrant visas of immigrant nationals of six Muslim-majority countries: Chad, Iran, Libya, Somalia, Syria, and Yemen. It also incorporated individualized "waiver" processes, whereby the ban would not foreclose visa issuance for individuals who could "demonstrate" certain criteria.

7.   Pars is the only organization in the United States focused on supporting the Iranian American community with their legal needs. Pars' Legal Department has a case roster that is broad and geographically diverse, providing information and support to families and individuals

from across the country. This includes direct immigration services assisting individuals with a range of immigration processes, including citizenship/naturalization applications, green card applications and renewals, domestic violence-based immigration petitions, family-based petitions, I-730 Refugee/Asylee petitions, DACA renewals, travel documents, National Visa Center processing, employment authorization applications, requests for fee waivers, and representation at USCIS interviews. Pars' work also encompasses assisting individuals with more complex immigration relief such as humanitarian reinstatements and, previously, waivers under Section 3(c) of the Muslim Ban.

8. As an organization, Pars and the individuals, families, and communities it serves have been and continue to be affected by the Muslim Ban's waiver provision. President Biden's January 20, 2020 proclamation rescinding the ban has changed nothing for the individuals Pars has assisted nor the tens of thousands of other non-immigrant visa and pre-January 20, 2020 immigrant visa applicants denied a visa pursuant to the original, unlawful guidance. These individuals continue to be directly impacted by the ban. They remain in limbo.

9. Pars currently has assisted approximately 30 non-immigrant visa applicants who were denied a visa as a result of the Muslim Ban and who were denied a waiver. These individuals applied for a visa and were denied between 2017 to 2020. President Biden's order does not specify that non-immigrant visa applicants whose applications were left denied because of a waiver denial should be reconsidered and Pars is not aware of any process or procedure through which reconsideration can be sought. Rather, we were told that if an individual was denied as a result of the Muslim Ban and was denied a waiver, they must reapply. Based on this, we have begun refiling cases for those that were denied, despite the lack of any clear instructions or guidance from the administration. And now, because of the pandemic, many consulates are not giving appointments. So Pars clients and community members continue to wait. Some have now been waiting for four years.

10. Reapplying requires many more hurdles than reconsideration presumably would, including paying application and consular fees for a second time, travel and, for some, overnight stays for consular appointments, as well as medical exams. All of this can quickly add up to

1  thousands of dollars. For example, bringing a relative to the U.S. requires one to file an I-130
2  Petition for an Alien Relative with a $535 filing fee, pay a consular processing fee of $325 for a
3  DS-260 Immigrant Visa Application, and a $120 affidavit of support filing fee. In addition, there
4  would be new medical exams, since any previous exam would have expired. The costs for medical
5  exams vary based on the country where they are performed and the specific doctor, but prices
6  range from $100 to over $400. If someone is coming from Iran, where many of our clients are
7  from, there is no U.S. consulate, so they must travel to a third country for their consular interview.
8  The cost of this travel is around $1000 round trip, plus the additional expense of, at a minimum,
9  seven nights at a hotel which is around $100 a night plus approximately $500 in incidentals and
10 food, etc. These expenses quickly add up to over $2000 just to reapply. Many indidivuals also
11 choose to hire an attorney to help them with the process, so they incur those fees as well.

12     11.     Since there currently is no reconsideration process of which I am aware, it is hard
13 to say exactly what that would look like but it would not involve traveling or paying fees to
14 reapply but rather the Department of State would reopen your file, adjudicate and process your
15 application and then mail the passport to your home.

16     12.     Pars also has assisted somewhere around 60 people with immigrant visa
17 applications who remain denied because they did not receive a waiver before the Ban was
18 rescinded. The majority of these are individuals in the United States who applied for an immigrant
19 visa for a family member abroad. These familes are in an indefinite state of limbo. These
20 individuals applied and were denied between 2017 and 2020. For example, one U.S. citizen
21 petitioner applied for their mother and father during the ban. After a long wait, their interview
22 was finally scheduled for April 2021, post-ban recission. The family went to Yerevan for an
23 interview and the post placed both applicants in Administrative Processing (AP). The family was
24 there for around two months or so during which they all caught covid and the father succumbed
25 to the virus in Yerevan hospital's ICU unit. The post finally issued the father's Immigrant Visa a
26 couple of days before he died in the Yerevan hospital. The mother survived but she's still in AP.
27 The recission of the ban has made little difference in our clients' consular processing as they are
28 still routinely placed in Administrative Processing without an end in sight.  This is exactly how

the cases were processed during the ban. Nothing has changed.

13. In addition to the original application, we provide ongoing assistance, advice and consulation regarding the process and pending approval for these individuals.

14. Over the last four years, Pars has focused close to 70% of its Legal Department resources as well as significant broader organizational advocacy on matters related to the Muslim Ban and waivers, including litigation and consular and congressional advocacy. For example, on a typical case, we may submit a request to expedite the interview schedule or to expedite visa issuance. This includes sending supporting evidence such as declarations and doctor notes to the consular office and follow up with three to five emails. At the same time, we would request congressional support which would include completing specific privacy forms, a description of the support needed and multiple email and phone conversation with congressional staff. We would then follow up with the embassy and with the congressional representative on an on-going basis (daily/weekly/monthly) to get updates on case adjudication. This is extremely time consuming and has taken resources away from helping other clients seeking different immigration remedies.

15. Due to this, Pars has had to hire additional staff to address the waivers' effects beginning in 2017 when I was hired as the Legal Director. Since that time we have continued to expand the Legal Department from a staff of seven to a staff of twelve to add additional resources to deal with implications of the ban in the communities we serve. We also have encouraged our paralegals to become U.S. Department of Justice accredited representatives so they can take on cases and alleviate the workload of some of the attorneys. This diversion of resources has continued post-rescission including recently hiring a managing attorney in our LA office to support our work assisting people denied a visa by the ban.

16. Specifically, Pars' ability to do U Visa and VAWA petitions has been curtailed as has its ability to respond to other humanitarian disasters evolving around the world. Were it not for the lingering effects of the ban, Pars would also be assisting many more immigrants, refugees and asylees, including responding to the crisis in Afghanistan and special immigrant juvenile status (SIJS) cases from LatinAmerica, among other issues. The SIJS cases are so necessary but

also very labor intensive and we don't currently have the capacity to take them on despite the need.

17. Plaintiff Pars asserts claims on behalf of itself and on behalf of its clients.

18. I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct. Executed in San Jose, California this first day of September 2021.

_____
PARIS ETEMADI SCOTT